PATRICIA E. REED, Appellant, v THOMAS F. REED, Respondent.

Third Department, March 31, 1983

APPEARANCES OF COUNSEL

*John J. Crimmins, III,* for appellant.

*Lance R. Miner* for respondent.

**OPINION OF THE COURT**

WEISS, J.

The parties were married in August, 1970 and have two minor children, Monica born January 22, 1973 and Kenneth born March 10, 1976. During the early years of their marriage, plaintiff[*] worked full time to support the family while defendant completed undergraduate studies leading to his Bachelor of Science degree in 1972. Following graduation, defendant worked as a teacher and from 1972 studied for a Master's degree during which period plaintiff again worked to help support the family. When this action was commenced, defendant was a tenured high school science teacher employed by Germantown Central School District. From 1978 to 1980, defendant had additional income from outside employment as an orderly in a nursing home and as a tutor, both during the school year and summer vacation periods. At the time of trial, he was employed by the Averill Park Central School District at an annual salary of $14,700. Plaintiff continued to have outside employment from time to time. Defendant segregated his outside income in his own separate bank account.

---

[*] Patricia Ellen Reed has been denominated plaintiff and Thomas Francis Reed defendant in the Supreme Court action, although in Columbia County Family Court, she is identified as petitioner and Mr. Reed as respondent.

Plaintiff's earnings and defendant's teaching salary were maintained in joint accounts. On August 4, 1980, following defendant's commission of alleged multiple acts of cruel and inhuman treatment including adultery, plaintiff commenced this action for divorce. A tortuous series of motions ensued which included 12 Supreme Court orders, 3 Family Court orders, and a writ of habeas corpus, all attempting to secure payment of ordered child support of $90 weekly plus $25 maintenance for plaintiff. The record demonstrates that defendant was totally contumacious and exhibited willful and wanton disregard of the lawful orders of the several courts. On November 14, 1980, defendant was precluded from offering any proof in support of his answer and counterclaim because of his failure to furnish a bill of particulars or comply with discovery and inspection. On March 24, 1981, a decree of divorce was granted plaintiff in a judgment which referred to Family Court for hearing and determination, all issues involving custody of the children, visitation, child support, maintenance for plaintiff, equitable distribution of marital property, arrearages, and counsel fees. Following an 11-day trial, Family Court determined that the parties should have joint custody of the children with physical custody awarded to plaintiff; defendant was ordered to pay $70 weekly child support with no award of maintenance to plaintiff; a Toyota automobile and defendant's pension plan were declared not to be marital property; and plaintiff was awarded exclusive occupancy of the marital home. Although both parties filed a notice of appeal, defendant never perfected his appeal. Plaintiff has been granted poor person status and appeals from all of the provisions of the July 9, 1981 Family Court order.

Initially, we reject defendant's contention that the issues of child support and maintenance have been rendered moot by a subsequent order of the Family Court issued March 12, 1982. Since the record has been certified as accurate, without inclusion of the subject order, matters set out in the briefs but not included in the record may not be considered by this court (*Matter of Hayes,* 263 NY 219, 221).

■ Preliminarily, we hold that Family Court erred in disregarding the Supreme Court order made November 14, 1980 (COBB, J.), which not only struck defendant's counterclaim and answer, but also precluded defendant "from putting [*sic*] in evidence on his behalf in this action the documents referred to in the answer and counterclaim and documents sought to be discovered in the Notice of Discovery and Inspection, or from offering any evidence upon the trial as to the contents thereof". This relief was granted pursuant to CPLR 3042 (subd [c]) and 3126. Although held in Family Court on transfer from Supreme Court, this was the only trial of the issues, and Family Court erroneously received extensive testimony and exhibits concerning defendant's entire history of past and current financial status since the preclusion order was the law of the case (see Siegel, New York Practice, § 448, pp 593-595). It is eminently clear that compulsory financial disclosure is a fundamental prerequisite of equitable distribution, and to effectuate this policy, the Legislature has provided mandatory sanctions for willful noncompliance (Domestic Relations Law, § 236, part B, subd 4), which this court will not hesitate to invoke when necessary. While striking a pleading for failure to comply with an order of disclosure is a severe penalty (see, e.g., *Ortiz v New York City Health & Hosps. Corp.*, 72 AD2d 741), review of the record confirms that defendant's noncompliance was willful and in blatant disregard of his statutory obligation to disclose. In our view, the preclusion order should have been adhered to and plaintiff permitted to proceed at trial solely upon her proof of the financial matters. In other words, the preclusion order should have been enforced by awarding plaintiff a default equitable distribution. Accordingly, upon the remand hereinafter ordered, defendant shall be considered to have defaulted and the proceedings shall be solely upon plaintiff's proof.

■ Turning to the merits, we find that the trial court abused its discretion by awarding child support of only $70 per week for 11 months of the year and by failing to award plaintiff rehabilitative maintenance. Section 236 (part B, subd 7, par a) of the Domestic Relations Law sets forth five factors the court must consider in making an award of

child support. It is clear defendant is more capable of paying support than plaintiff. Plaintiff's total weekly income is $119.87 comprised substantially of public assistance and food stamps, with weekly expenses of $233.80. In effect, the award relegates the children to a reduced standard of living. We hold that an increase in child support to $125 per week is necessary to prevent that result (*Cohen v Cohen,* 70 AD2d 925, 926; *Matter of Frye v Truhn,* 68 AD2d 989, 990), and that such payments should continue throughout the entire year (*Matter of Jane S. D. v Francis X. D.,* 110 Misc 2d 737, 741) commencing upon entry of the order hereon.

Nor can we agree that a provision for maintenance is unwarranted to provide plaintiff an opportunity to achieve independence. Here, the court determined that the proposed award was sufficient to enable plaintiff to support herself and her children while simultaneously seeking higher education on a part-time basis (Domestic Relations Law, § 236, part B, subd 6, par a, cl [4]). This conclusion is unrealistic and fails to properly consider plaintiff's continuing reliance on public assistance. Further, insufficient weight was accredited to plaintiff for her contributions to the career potential of her spouse, and the court too lightly dismissed defendant's wasteful dissipation of family assets (Domestic Relations Law, § 236, part b, subd 6, par a, cls [8], [9]). In our view, the determination should be modified by adding a provision for maintenance of $25 per week for a period of three years.

In view of defendant's repeated disregard of support orders throughout this proceeding, we are compelled to direct the Family Court, upon remand, to issue a wage assignment order in the sum of $150 per week pursuant to section 49-b of the Personal Property Law. It is unfortunate but evident that such measures are necessary to effectuate the above payments of support and maintenance.

Next, we find the court's remedy as to support arrearages inadequate. As correctly noted by the court, defendant was never relieved of his obligation to pay support of $115 weekly under the temporary order entered September 19, 1980. Defendant's contumacious disregard of several sup-

port and contempt orders causing plaintiff to become a public charge will not be condoned. Merely charging defendant's equity in the marital residence with arrearages, however, "is an inappropriate and unsatisfactory way to provide for the support of * * * child[ren] which obviously [require] current cash" (*Lea v Lea,* 59 AD2d 277, 279, mot for lv to app den 43 NY2d 646). Plaintiff should receive title to the residence to enable her to sell the property and recoup her losses and to prevent a continuing lien in favor of Social Services from ultimately negating her entire interest. It is remotely possible that defendant may have a balance due him after all charges are made against his equity. Therefore, a rehearing is first necessary to calculate the actual value of the marital residence, as well as the other offsets against defendant's equity therein. Accordingly, the matter must be remitted for purposes of valuation.

■ We further find that the court erred as a matter of law in concluding that the 1980 Toyota station wagon was not marital property. Section 236 (part B, subd 1, par c) defines marital property as "all property acquired by either or both spouses during the marriage * * * [and] shall not include separate property". The vehicle was purchased with funds drawn from the parties' joint savings account. Contrary to the court's interpretation, the small equity in the vehicle does not determine its status. Without question, the Toyota was marital property and its net value should be ascertained upon remand.

■ Whether a noncontributory nonvested pension plan constitutes marital property for purposes of equitable distribution presents a novel appellate question in this State. Other jurisdictions have tended to hold that contingent pension rights are not marital property, but mere expectancies (see, e.g., *Miller v Miller,* 83 Mich App 672; *White v White,* 136 NJ Super 552; but see *Matter of Brown,* 15 Cal 3d 838; cf. Recent Developments, Equitable Distribution in New York, 45 Albany L Rev 483). One recent New York case reached a contrary result on the theory that retirement pensions constitute deferred compensation to which the employee has a contractual right (*Hebron v Hebron,* 116 Misc 2d 803, 808). We agree with this analysis. Here,

defendant entered the New York State Teachers' Retirement System on September 5, 1972 and at the conclusion of the 1980-1981 school year had accumulated nine years of service credit. Review of the record confirms that his account was noncontributory and that at the commencement of the present action, his interest was nonvested (see Education Law, § 533). Nonetheless, this court is not unmindful of defendant's expressed intention of teaching throughout the 1981-1982 school year, upon completion of which, his pension rights would since have become vested. Nor can we ignore the fact that all pension interests were acquired during the marriage and that plaintiff's homemaking and employment efforts significantly contributed to promoting and maintaining defendant's teaching position. In our view, the pension plan should be recognized as marital property in which plaintiff has a cognizable interest (Domestic Relations Law, § 236, part B, subd 5, par d, cl [4]). We recognize that the pension is comprised of payments from the employer, not the employee, but note that these contributions do not emanate from the mere beneficience of the employer, but actually represent part of the consideration earned by the employee for services rendered. In this sense, defendant has a contractual interest in the pension which may be treated as marital property (see *Hebron v Hebron, supra*). Having concluded that the pension plan is marital property subject to equitable distribution, it remains to determine the value of the plan and make equitable apportionment, and thus the matter must be remitted to Family Court for such purposes as well as a determination of the manner in which plaintiff should be paid her share.

An award of counsel fees is proper in this case (see *Walsh v Walsh,* 92 AD2d 345 [decided herewith]). Plaintiff's financial plight has been clearly established and defendant must make payment on the $1,000 fixed by prior orders, with any additional award to be made upon remand. We note from the record that defendant paid his attorney $1,000 out of funds from the joint account.

Finally, based upon the entire record, we find that the court abused its discretion in awarding joint custody of the children. "Though the trial court's determination should be

accorded special weight and consideration (*Eschbach v Eschbach,* 56 NY2d 167), its discretion is not absolute and may be set aside where it lacks a sound and substantial basis in the testimony" (*Matter of Payette v Payette,* 91 AD2d 733, 734). Here, the degree of acrimony between the parents, as reflected in the extensive litigation, militates against a finding of joint custody (*Braiman v Braiman,* 44 NY2d 584). As noted by former Chief Justice BREITEL, joint custody "is insupportable when parents are severely antagonistic and embattled" (*supra,* p 587). So it is here that joint custody would work a disservice to the children. Accordingly, we direct that full custody be granted to plaintiff with visitation to defendant as determined upon remand.

In essence, the court's attempted distribution of marital property was improper without first identifying and ascertaining the value of the marital property. A remand is necessary to compute the value of the automobile, the pension plan, and the marital residence, as well as support arrearages and unpaid counsel fees due. An immediate conveyance of the residence to plaintiff should be ordered, and in the event defendant has any balance due to him after the afore-mentioned charges against his share, credit may be given to him against future support and maintenance payments. This will prevent the loss of the entire equity of both parties because of the continually increasing public assistance lien. In the interim, we deem the temporary award of maintenance granted herein to plaintiff to be appropriate, subject to reassessment by the trial court once the noted items have been evaluated (Domestic Relations Law, § 236, part B, subd 6, par a, cl [1]). Additional counsel fees must also be considered upon remand.

The order should be modified, on the law and the facts, by increasing child support to $125 weekly, adding a provision for the payment of temporary maintenance to plaintiff in the sum of $25 weekly for three years, directing Family Court to issue an income deduction order in the sum of $150 weekly, directing the payment of $1,000 in counsel fees previously awarded, reversing so much thereof as pertains to the equitable distribution of marital property, and remitting the matter to Columbia County Family

Court for determination of the value of marital property and award of further counsel fees not inconsistent herewith, and reversing the award of joint custody by awarding sole custody to plaintiff and remitting for a determination of defendant's rights to visitation, and, as so modified, affirmed.

KANE, J. P., MIKOLL, YESAWICH, JR., and LEVINE, JJ., concur.

Order modified, on the law and the facts, by increasing child support to $125 weekly, adding a provision for the payment of temporary maintenance to plaintiff in the sum of $25 weekly for three years, directing Family Court to issue an income deduction order in the sum of $150 weekly, directing the payment of $1,000 in counsel fees previously awarded, reversing so much thereof as pertains to the equitable distribution of marital property, and remitting the matter to Columbia County Family Court for determination of the value of marital property and award of further counsel fees not inconsistent herewith, and reversing the award of joint custody by awarding sole custody to plaintiff and remitting for a determination of defendant's rights to visitation, and, as so modified, affirmed, with costs to plaintiff.