CHARLES V. DAMIANO, Respondent, v FRANCES M. DAMIANO, Appellant.

Second Department, June 7, 1983

APPEARANCES OF COUNSEL

*Birbrower, Montalbano, Condon, Seidenberg & Frank, P. C. (Harold A. Seidenberg* and *Peter K. Eck* of counsel), for appellant.

*Zebrowski & Nicolai (Kenneth P. Zebrowski* of counsel), for respondent.

OPINION OF THE COURT

MOLLEN, P. J.

This appeal concerns a matrimonial action which, having been commenced after the effective date of part B of section 236 of the Domestic Relations Law, is governed by the equitable distribution provisions of that statute. In reviewing the issues presented, we have occasion to consider for the first time the question of whether and to what extent one spouse has a right, under equitable distribution, to the other spouse's employment pension or annuity.

The parties were married in June, 1958 and have four children, the oldest born January 31, 1960, the youngest born February 29, 1972. In September, 1980, the husband commenced an action for divorce on the ground of cruel and inhuman treatment. Thereafter, the wife sought an order granting her temporary maintenance, child support, exclusive possession of the marital residence, and counsel fees. In addition, her answer contained a counterclaim for divorce, also on the ground of cruel and inhuman treatment. On October 9, 1980, the husband was ordered, *pendente lite,* to pay the mortgage and utilities for the marital residence, and temporary maintenance and child support of $135 per week. He was also directed to pay $750 in counsel fees.

In January, 1981, a plenary trial was held in the matrimonial action. The issues contested were each party's request for a divorce, the wife's request for maintenance and child support, and the equitable distribution of the marital property. In its written decision, issued well after the conclusion of the trial, the court granted each party a divorce on the ground of cruel and inhuman treatment. The wife was awarded custody of the three minor children, and child support was ordered in the amount of $35 per week for each of those children until he or she attained the age of 21 or was sooner emancipated. The wife's request for maintenance was denied. She was, however, awarded exclusive possession of the marital residence, but only for a period of five years after entry of the judgment. The court directed that, at the end of that period, the marital residence was to be sold and the proceeds were to be divided

equally between the parties. The court further ordered that the wife was to receive an additional $2,500 from the husband's share of the proceeds of the sale of the residence to compensate her for her interest in the value of the husband's employment "pension fund" as of the date of the trial. Upon the sale of the residence, the proceeds of the sale of the furniture currently in the home were to be divided equally between the parties.

The wife now appeals, *inter alia,* from stated portions of the divorce judgment, dealing with maintenance and the distribution of marital property.

We begin by noting that the governing statutes require a court in a matrimonial action to set forth the factors it considered and the reasons for its decision in any matter involving maintenance, child support, and the equitable distribution of marital property (see Domestic Relations Law, § 236, part B, subd 5, par g; subd 6, par b; subd 7, par b). In the instant case, the Trial Judge did not follow that mandate, omitting from his decision and from the final divorce decree any specific reference to the factors upon which his determinations were based. Nevertheless, the record is sufficient to permit us to review the decision.

At trial, the husband testified that he was earning approximately $451 per week in gross pay as a printer. His net weekly income was approximately $270. The wife testified that although she was not working, she had in the past performed part-time office work. Neither party had any bank accounts or income-producing investments. The parties each described various health problems which could affect their earning capacity in future years. The husband, who was 46 years old at the time of the trial, had suffered a heart attack in November, 1979 and remained out of work for some four months. The wife, who was 42 years old when the divorce action was commenced, testified that in 1964 she had had an operation for a ruptured disc and that ever since she has had periodic spasms in her back. In 1977, her attempt to hold a full-time job at a nursing home ended after only six months, in part because it increased her back problems. The wife testified further that she was under a doctor's care, and that he had told her that holding a full-time job would be harmful to her health.

■ Considering these factors and other evidence adduced at trial, and measuring them against the appropriate statutory criteria, we agree with the trial court that $35 per week as support for each of the minor children was appropriate. In our view, however, the court should have granted the wife's request for maintenance by awarding her a weekly sum of $25 for her support, and additionally, a prorated amount equal to one half of the payments due on the mortgage on the marital residence.

Moreover, the equitable distribution statute permits a court to consider "the need of a custodial parent to occupy or own the marital residence and to use or own its household effects" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [3]). In our view, the wife, who received custody of the children, should have been awarded exclusive possession of the marital residence until the youngest child, now 11 years old, attains the age of 21 or is sooner emancipated (see, e.g., *Weseley v Weseley,* 58 AD2d 829; *Ettinger v Ettinger,* 107 Misc 2d 675). At that time, the house and the furnishings in question shall be sold, and the proceeds divided equally subject to any offset which may be determined to be appropriate.

We turn then to the question of whether and to what extent the wife has an interest in the husband's pension plan and annuity. The husband testified that he had worked for the same printing company for some 28 years and that, as a result, he has a vested pension through his union. He introduced documents purporting to explain calculations of benefits for his pension, but no testimony was offered by an administrator of the fund or an expert witness to assist in interpreting those documents. The husband testified that under the plan he could not retire or collect benefits at an age earlier than 55. If he retired at that age, he would receive 40% less in pension benefits per month than he would were he to retire at age 65. The court was offered and considered a letter submitted by the administrator of the pension fund which asserted that, based upon the husband's credited service and earnings through November, 1980, he would receive $236.85 per month if he were to retire at 65, and $100.75 per month were he to retire at age 55. Also introduced was evidence that the

husband had $6,715.47 in an "annuity fund" at the time of trial. He was unable, however, to offer any explanation regarding this fund or to indicate whether it was related to his pension. In addition, the husband testified that, at one time, his union had invested in shares of a Dreyfus fund for the benefit of retiring employees. He introduced a statement from the Dreyfus fund and estimated the value of his shares at nearly $3,700. There was no expert testimony to substantiate that estimate and the Dreyfus fund investments have apparently been discontinued.

■ Without any indication of its reasoning or calculations, the trial court simply awarded the wife $2,500 as her share of the money in her husband's "pension fund". The court directed that she receive that amount out of her husband's share of the proceeds of the sale of the marital residence. In our view, the court's determination on this subject was inadequate, and we remit for further proceedings in accordance with the following discussion.

The issue of the status of a spouse's pension or annuity fund under equitable distribution is one which has not previously been addressed by this court. Several published trial court opinions which have dealt with the question have held that an employed spouse's interest in a vested pension plan accruing on account of employment during the period of the marriage constitutes marital property for the purposes of equitable distribution (see, e.g., *Hebron v Hebron,* 116 Misc 2d 803; *Jolis v Jolis,* 111 Misc 2d 965; *Majauskas v Majauskas,* 110 Misc 2d 323, 324; see, also, *Fay v Fay,* 108 Misc 2d 373). The same view has been taken by courts in sister States which have equitable distribution or community property statutes (see, e.g., *Matter of Brown,* 15 Cal 3d 838; *Matter of Hunt v Hunt,* 78 Ill App 3d 653; *Kikkert v Kikkert,* 177 NJ Super 471 affd 88 NJ 4; *Matter of Rogers v Rogers,* 45 Ore App 885, mod on other grounds 47 Ore App 963; *Sims v Sims,* 358 So 2d 919 [La]; *Cearley v Cearley,* 544 SW2d 661 [Tex]; *Miller v Miller,* 83 Mich App 672; *Elliott v Elliott,* 274 NW2d 75 [Minn]; *Bloomer v Bloomer,* 84 Wis 2d 124). Our view of the language and intent of New York's equitable distribution statute leads us to conclude as well that an employment pension plan is subject to equitable distribution.

A pension fund is properly considered to be an asset of the marriage since it represents in essence a form of deferred compensation derived from a spouse's employment and contemplated to be enjoyed by both spouses at a future date (see *Reed v Reed,* 93 AD2d 105). Moreover, specific language in our statutes suggests that pensions belonging to either spouse should be considered in the equitable distribution of marital property. For example, one of the factors listed as a consideration in equitable distribution is "the loss of * * * pension rights upon dissolution of the marriage as of the date of dissolution" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [4]). Questions remain, however, as to the types of pensions which are to be considered marital property and the means by which the nonemployed spouse's interest in those pensions is to be enforced.

Briefly stated, pension benefits are said to be vested when they are not forfeited even if the employee is discharged or voluntarily terminates his employment. The only condition precedent to the receipt of vested pension benefits is that the employee survive until retirement age. In contrast, nonvested pension benefits are contingent upon the employee continuing his employment with the employer or organization sponsoring the plan. Moreover, a pension plan is said to be matured when the employee has an unconditional right to immediate payment of the benefits upon retirement. Some pensions are contributory in that they are financed by both employer and employee contributions. Some are financed by the employer alone.

There is a split of authority among the courts of different jurisdictions as to whether nonvested pensions should be subject to distribution upon divorce. An increasing number of courts have held that such pensions may be included in distributable marital property (see, e.g., *Reed v Reed, supra; Picco v Picco,* NYLJ, May 23, 1983, p 15, col 2; *Hebron v Hebron, supra; Matter of Brown, supra; Sims v Sims, supra; Cearley v Cearley, supra; Leighton v Leighton,* 81 Wis 2d 620). Others, however, have held that only vested pension benefits are distributable (see, e.g., *Miller v Miller, supra; White v White,* 136 NJ Super 552; *Savage v Savage, __* Ind App __, 374 NE2d 536; *Daffin v Daffin,* 567

SW2d 672 [Mo]; *Lentz v Lentz,* 117 Misc 2d 78). A major difficulty with the distribution of nonvested pension benefits concerns the fact that their receipt is contingent upon the employed spouse remaining with his employer after the matrimonial action is completed. By permitting the immediate equitable distribution of an interest in nonvested retirement benefits, an undue burden may be placed upon the employed spouse to remain at his present job for the benefit of the other spouse, for if he leaves his job after the divorce he will have been required to distribute benefits to which the other spouse was not actually entitled. In acknowledgment of that problem, some courts have suggested that the distribution of nonvested pension benefits await either the vesting of the pension or the actual retirement of the employed spouse. Thus both spouses share equally the risk that the pension will fail to vest (see *Picco v Picco, supra; Hebron v Hebron, supra; Matter of Brown, supra; Sims v Sims, supra; Cearley v Cearley, supra*). Another approach would be for the court to make an immediate distributive award based upon nonvested pension benefits, with the award discounted to reflect the contingent nature of the benefits.

As to the contributory or noncontributory nature of the pension, the prevailing and reasonable view is to consider as marital property the entire amount of the accrued benefits, whether or not the employed spouse has made contributions to the plan (see, e.g., *Matter of Rogers v Rogers, supra; Matter of Hunt v Hunt, supra*).

The concept of equitable distribution rests largely on the view that marriage, *inter alia,* is an economic partnership and that, therefore, with limited exceptions, property acquired in the course of the marriage should be equitably shared in the event of divorce. The question of which spouse acquired a particular piece of such property is generally immaterial, for the law recognizes that each party has made contributions to the enterprise that comprises a marriage. Thus, for example, where only one spouse is employed, the law will recognize the value to the marriage of the other spouse's efforts in the home. It is those efforts that properly entitle the nonemployed spouse

to an equitable share of property acquired as a result of the other spouse's employment.

Considering all the foregoing, therefore, we hold that pension benefits belonging to either spouse attributable to employment during the marriage, whether those benefits are vested or nonvested, and whether the plan is contributory or noncontributory, constitute marital property subject to equitable distribution upon divorce. The marital property, however, shall include only that portion of the pension benefits which have accrued during the marriage and prior to the commencement of the divorce action (see Domestic Relations Law, § 236, part B, subd 1, par c).

We turn finally to the methods by which the nonemployed spouse's right to pension benefits may be enforced. Primarily there are two such methods. One is to award the nonemployee spouse a lump sum, calculated by determining the present value of the pension benefits at the time of the divorce, the percentage of that value attributable to the period between the date of the marriage and the commencement of the divorce action, and the appropriate equitable share to which the nonemployed spouse is entitled (see *Majauskas v Majauskas,* 110 Misc 2d 323, 327, *supra; Matter of Hunt v Hunt,* 78 Ill App 3d 653, *supra; Gibbons v Gibbons,* 105 Mich App 400; *Holbrook v Holbrook,* 103 Wis 2d 327). This approach has the distinct advantage of providing an immediate settlement of the pension distribution problem and of avoiding continued strife and uncertainty between the parties (see *Kikkert v Kikkert, supra*). The payment of a lump sum can often be accomplished by the redistribution of other marital assets as, for example, the proceeds of the sale of the marital residence.

A second method, often preferable where contingencies make the determination of present value difficult or where there are insufficient marital assets from which to derive large lump-sum payments, is to award the nonemployee spouse a specific share of the periodic pension benefits the employed spouse will receive in the future. To do so, a court must determine the percentage of future pension payments attributable to the period of the marriage prior to the commencement of the divorce action and the appropriate

equitable share to which the nonemployed spouse is entitled (see, e.g., *Hebron v Hebron,* 116 Misc 2d 803, *supra; Majauskas v Majauskas,* 110 Misc 2d 323, *supra; Sims v Sims,* 358 So 2d 919 [La], *supra; Matter of Hunt v Hunt,* 78 Ill App 3d 653, *supra*). The method chosen, of which the two described are not exclusive, lies within the reviewable discretion of the court and must be contoured to suit the particular circumstances, needs and means of the parties in the case.

At bar, the court simply fixed the sum of $2,500 as an offset representing the wife's interest in her husband's "pension fund". There is no indication as to how that figure was determined. Accordingly, we remit the case for further proceedings at which the court must determine the precise nature and present value of the husband's pension and annuity, and the amount to which the wife is entitled. Having made that determination, the court will then consider the most appropriate method, consistent with the means and needs of the parties, to enforce the wife's right to her interest in the husband's pension and annuity.

DAMIANI, THOMPSON and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Rockland County, dated July 2, 1981, modified, on the law and the facts, so as to provide that the defendant shall receive maintenance of a weekly sum of $25 for her support and additionally, a prorated amount equal to one half of the payments due on the mortgage on the marital residence, the defendant shall have exclusive possession of the marital residence until the parties' youngest child attains the age of 21 or is sooner emancipated, and the defendant is entitled, in lieu of $2,500, to her appropriate interest in the plaintiff's pension and annuity. As so modified, judgment affirmed insofar as appealed from, and matter remitted to the Supreme Court, Rockland County, for a new determination of the defendant's appropriate interest in the plaintiff's pension and annuity in accordance with the opinion herewith.

Order of the same court dated July 12, 1982, affirmed. No opinion.

Defendant is awarded one bill of costs.