Marion Rodgers, Appellant, v Frederick Rodgers, Respondent.

Second Department, December 27, 1983

### APPEARANCES OF COUNSEL

*Solerwitz, Solerwitz & Leeds* (*Lenard Leeds* and *Barbara Simon* of counsel), for appellant.

*Gatz, Arnoff & Czygier* (*Harvey A. Arnoff* of counsel), for respondent.

### OPINION OF THE COURT

Titone, J. P.

In this matrimonial action, plaintiff wife, Marion Rodgers, appeals, as limited by her brief, from stated portions of a judgment of the Supreme Court, Nassau County, which, among other things, granted her a divorce on the ground of abandonment, awarded her maintenance, and directed distribution of the marital property in a certain manner. She complains that the judgment failed to sufficiently reimburse her for the funds expended on necessities, that the maintenance award is inadequate, that equitable distribution of defendant's interest in an automobile repair business, jointly held real estate, and nonvested pension was improperly denied, and that she should not have been required to pay her own counsel and expert fees. We modify the judgment in part and remit for further proceedings.

The parties were married in February, 1976. Plaintiff was 47 years old at the time and was employed by Grumman Aerospace Corporation in the accounts payable department, earning $260 per week. She retired in July, 1978, ostensibly due to health problems, and began to

receive a pension of $319 per month which will cease when she begins receiving Social Security at age 65. Defendant, 33 years of age at the time of the marriage, was employed as a police officer with the Town of Riverhead and still serves on that force. During the course of the marriage, he held several other part-time jobs. No children were born of this marriage, although defendant has two children from a prior marriage for whose support he is partially responsible.

Marital difficulties apparently began in May, 1980, when the defendant left the plaintiff and moved closer to his place of employment in Suffolk County. This action, seeking dissolution of the marriage, equitable distribution, maintenance, and a monetary judgment for necessities, was commenced in January, 1981. Temporary maintenance was awarded in April, 1981 and a payroll deduction order was issued against defendant's salary upon his failure to satisfy that obligation. There were arrears of $1,825 remaining at the time of trial.

According to the testimony at trial, defendant earned a gross biweekly income of $938.69 as a police officer and owned an interest in an automobile repair business which he had established in November, 1981. Plaintiff had a monthly income of approximately $651, comprised of the $319 in pension benefits, $200 in part-time earnings, and $132 in interest income.

In a memorandum opinion which gave consideration to each of the statutory factors (see Domestic Relations Law, § 236, part B, subd 5), Special Term made an award of $26 per week for maintenance effective from the date of the commencement of the action and granted defendant a credit for any temporary maintenance paid from that date to the date of the payment of the maintenance award. Plaintiff was also awarded a monetary judgment totaling $5,850, comprised of $4,025 for necessities and $1,825 for arrears under the temporary maintenance order, subject to a $49 per week credit, measured from the date of the commencement of the action, representing· the difference between the maintenance finally awarded and the temporary maintenance. She was denied equitable distribution

of defendant's automobile repair business, recently acquired real property and nonvested pension benefits as well as counsel and expert fees.

■ Resolution of the issue of plaintiff's right to reimbursement of expenditures for necessities turned primarily on the credibility of the witnesses. It was plaintiff's burden to establish her right to recover for each of the items sought and we perceive no basis to overturn Special Term's findings (see *Malman v Malman,* 46 AD2d 803; *Mumford v Mumford,* 44 AD2d 817; *Rosinsky v Rosinsky,* 42 AD2d 999, mot for lv to app den 33 NY2d 519).

■ On the issue of maintenance, however, we find that a substantial modification is in order. Based upon an examination of relative needs, resources, and earning capacities of the parties, we find that an award of $50 per week would be more appropriate. Plaintiff's present income and future earning capacity have been restricted by her age and apparent health problems (Domestic Relations Law, § 236, part B, subd 6, par a, cls [1], [2], [3]). In contrast, defendant, who is in good health, has a significantly greater earning capacity both from his full-time employment as a police officer and from the business that he partially owns (cf. *Kay v Kay,* 37 NY2d 632, 637; *Damiano v Damiano,* 94 AD2d 132, 135). We believe that the additional maintenance award will assist the plaintiff in meeting her living expenses in accordance with the standard of living established by the parties during the marriage without impinging upon the defendant's ability to support himself and his dependents. Since this will also enable her to obtain and pay for health insurance, there is no basis for imposing such an obligation on the defendant and we decline to do so.

■ Moreover, the provisions of the judgment making the permanent maintenance award effective *nunc pro tunc* to the date of the commencement of the action and affording defendant a credit against the arrears accrued under the temporary maintenance order should be deleted.

Part B of section 236 (subd 6, par a) provides that a permanent maintenance order "shall be effective as of the date of the application therefor, and any retroactive amount of maintenance due shall be paid in one sum or

periodic sums, as the court shall direct, taking into account any amount of temporary maintenance which has been paid." We read this provision as requiring a court to provide retroactive payments of permanent maintenance only if the award is in excess of any temporary maintenance award, rather than as credits for overpayments of temporary maintenance.[1]

Prior to the 1980 amendments to section 236 of the Domestic Relations Law (L 1980, ch 281), it was well settled that temporary payments made pursuant to a subsequently nullified court order could not be recovered either directly by restitution or indirectly by recoupment (e.g., *Rosenberg v Rosenberg,* 42 AD2d 590; *Grossman v Ostrow,* 33 AD2d 1006; *Griffin v Griffin,* 219 App Div 370) and that, while the court possessed some discretion, a retroactive reduction should not be granted in favor of an individual who had willfully flouted such an order (e.g., *Wolf v Wolf,* 50 AD2d 740; *Brant v Brant,* 10 AD2d 567). The strong policies underlying these holdings remain viable (Domestic Relations Law, § 236, part B, subd 9, par b; § 244; see Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, § 236, C236A:11, pp 91-92, 1982-1983 Pocket Part; Siegel, 1964 Practice Commentary, C236B:28, pp 146-147, 1982-1983 Pocket Part) and are fully applicable here.[2]

We turn, then, to the questions concerning the distribution of the marital property. To place them in proper focus, it is useful to clear up a common misconception concerning the scope of the Equitable Distribution Law. While the concept of equitable distribution does borrow the theory of a community property regime that a marriage is an economic partnership between the spouses (see, e.g., Note, New York's Equitable Distribution Law: A Sweeping Reform, 47 Brooklyn L Rev 67, 70-71), it is a mistake to

---

1. In any event, as plaintiff did not request maintenance in her original divorce complaint, a permanent maintenance award could be retroactive only to the date of her first application for temporary maintenance (see Scheinkman, 1982 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, § 236, part A, C236A:10, pp 56-57, 1982-1983 Pocket Part).

2. In fact, whatever discretion existed under former law (cf. *Silver v Silver,* 73 AD2d 162 with *Benjamin v Benjamin,* 70 AD2d 813) has been limited by the 1980 amendments (see *Vigo v Vigo,* 97 AD2d 463; *Coveleski v Coveleski,* 93 AD2d 924; *Malta v Malta,* 87 AD2d 988).

suggest that equitable distribution and community property are synonymous (see *Painter v Painter,* 65 NJ 196, 216-217).

The basic premise of a community property system, whose "genius is not that of the common law" (*Painter v Painter, supra,* p 216; see, also, 2 Tiffany, Real Property [3d ed], § 438), is that each spouse has a present vested undivided one-half interest in all property acquired during the existence of the marital relationship, except property received by gift, inheritance or devise (2 Tiffany, *op. cit.,* §§ 438, 439). Neither spouse has the power to make a testamentary disposition of community property in excess of his or her interest (2 Tiffany, *op. cit.,* § 442). Upon dissolution of the marriage, each spouse is entitled to an equal division of the community property (see De Funiak & Vaughn, Principles of Community Property [2d ed, 1971], § 105; Prager, Sharing Principles and the Future of Marital Property Law, 25 UCLA L Rev 1). "Equal division is certainly the fundamental objective" (*Matter of Brigden,* 80 Cal App 3d 380, 390).

In stark contrast, under our Equitable Distribution Law, during the marriage, and absent any divorce action, each spouse retains sole interest in the property to which he or she has title and, with few exceptions (see, e.g., EPTL 5-1.1, 5-3.1), can dispose of it as he or she desires (Note, *op. cit.,* 47 Brooklyn L Rev 67, 71; cf. *Imel v United States,* 184 Col 1, 9). In a divorce proceeding, which triggers the right to equitable distribution, property acquired during marriage need not be distributed equally but, rather, "in a manner which reflects the individual needs and circumstances of the parties" (Memorandum of Governor Carey, 1980 McKinney's Session Laws of NY, p 1863). Unlike a community property regime, fairness, not mathematical precision, is the guidepost. Under equitable distribution, a court possesses flexibility and elasticity to mold an appropriate decree because what is fair and just in one circumstance may not be so in another (cf. *Perri v Perri,* 97 AD2d 399).

██ Plaintiff clearly is not entitled to a share of defendant's interest in the automobile business. Inasmuch as

the business was acquired subsequent to the commencement of this action, it does not constitute "marital property" subject to equitable distribution (Domestic Relations Law, § 236, part B, subd 1, par c). Similarly, it was appropriate not to award plaintiff a share of the real property acquired by defendant in joint tenancy with two other parties in 1980, as he possessed negligible equity when this action was commenced several months later. Special Term erred, however, in concluding that defendant's nonvested pension did not constitute an asset available for equitable distribution.

In *Damiano v Damiano* (94 AD2d 132, *supra*), we held that, despite its contingent nature, a nonvested pension right should be considered marital property subject to equitable distribution (see, also, *Perri v Perri, supra; D'Amato v D'Amato,* 96 AD2d 849; *Reed v Reed,* 93 AD2d 105). We noted that there were basically two theories by which the nonemployed spouse could enforce his or her rights to such benefits, i.e., either a present lump-sum payment or a specific share of payments to be received in the future. We declined, however, to make the evaluation ourselves, remitting the matter for a hearing (see, also, *Perri v Perri, supra; D'Amato v D'Amato, supra*). The same course should be followed here within the following parameters.

A lump-sum award is preferable when the amount the nonemployee spouse will receive is small and there is sufficient marital property to be awarded in lieu of a deferred interest, for enforcement problems may be avoided and finality achieved before the actual receipt of retirement benefits which may be years in the future (Comment, Domestic Relations — Husband's "Vested" Interest in Retirement Plan is Divisible as Marital Property, 42 Mo L Rev 143, 150-151). Since these factors are absent here, an "'if, as, and when'" approach would be more equitable and should be employed upon remittance (Comment, *op. cit.,* 42 Mo L Rev 143, 150).

We remind Special Term that actuarial testimony should not be viewed as talismanic for it may fail to account for a number of possibilities, including, but not limited to, forfeiture, abandonment of pension rights prior

to vesting, inflation and liability for taxes (see Hughes, Profit-Sharing and Pension Plans, 44 Texas L Rev 860, 879; Wise, Those Uncertain Actuaries, *Fortune* [Dec., 1965], p 154 [Jan., 1966], p 164), factors which must be considered (see *Wilder v Wilder,* 85 Wn 2d 364, 369; *Szulgit v Szulgit,* 94 AD2d 979; Stripling, Transfer of Pension Benefits Incident to Divorce or Separation: An Analysis, Journal of Taxation [April, 1981], p 216). Also, care must be taken not to consider the pension interest twice, once as an asset for property division and again as an income item utilized in ascertaining maintenance (see *Kronforst v Kronforst,* 21 Wis 2d 54, 63-64; Comment, *op. cit.,* 42 Mo L Rev 143, 150). Once the value of the pension rights has been determined, Special Term should allocate the parties' interests in accordance with the percentage formula set forth in *Damiano v Damiano* (*supra,* pp 139-140; see, also, *Szulgit v Szulgit, supra*).

■ Finally, the record shows that plaintiff had sufficient funds from which she could pay her attorney and maintain this action. Therefore, we cannot say that Special Term abused its discretion in refusing to award plaintiff counsel and expert fees (see *Ackerman v Ackerman,* 96 AD2d 543; *Kaplan v Kaplan,* 77 AD2d 891, app dsmd 51 NY2d 822; *Lebensfeld v Lebensfeld,* 72 AD2d 790, 791; *Berzins v Berzins,* 64 AD2d 881, 882).

For the reasons stated, the judgment appealed from should be modified, on the law and the facts, as provided above, and the matter remitted to Special Term for further proceedings, all in accordance with this opinion.

MANGANO, GIBBONS and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Nassau County, dated September 7, 1982, modified, on the law and the facts, by increasing the maintenance award to $50 per week, by deleting the provision that defendant is entitled to a credit of $49 per week from January 31, 1981 until the date of the judgment, against the money judgment in favor of the plaintiff and by adding a provision thereto that the plaintiff is entitled to the equitable distribution of defendant's nonvested pension. As so modified, judgment affirmed in-

sofar as appealed from, without costs or disbursements, and matter remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith.