CYNTHIA WILSON, Respondent, v WILLIAM H. WILSON, Appellant.

First Department, April 17, 1984

APPEARANCES OF COUNSEL

*Edmund F. Wolk* for appellant.

*Morton Grossman* of counsel (*Grossman & Zafrin, P. C.,* attorneys), for respondent.

OPINION OF THE COURT

FEIN, J.

This appeal is only from so much of a judgment, granting plaintiff a divorce from defendant, as directs defendant (1) to pay plaintiff the sum of $45,000; (2) to pay maintenance

to plaintiff for three years at the rate of $350 per week; (3) to deliver to plaintiff certain personal property deemed to be her separate property; (4) to pay plaintiff's counsel fees and disbursements in the amount of $9,673; (5) to provide plaintiff with Blue Cross/Blue Shield, major medical and dental insurance coverage for three years; (6) to designate plaintiff the irrevocable beneficiary of one third of the proceeds of the life insurance policy provided to defendant as an incident of his employment; and (7) to designate plaintiff the irrevocable beneficiary of 8½% 10-year benefits under the spousal protection provision of defendant's retirement/pension plan.

Section 236 (part B, subd 5, par g; subd 6, par b) of the Domestic Relations Law provides that in any action for divorce where an equitable disposition of property is made and spousal maintenance is awarded, the trial court must set forth the factors it considered and the reasons for its decision. This requirement is mandatory, and may not be waived by either party. An insufficient explanation for the court's findings and determination requires reversal of the judgment and remand for further consideration (*D'Amato v D'Amato,* 96 AD2d 849; *Conde v Conde,* 96 AD2d 747; *Nielsen v Nielsen,* 91 AD2d 1016; *Hanford v Hanford,* 91 AD2d 829). Where the trial court's reasons have not been sufficiently delineated, there is no basis for intelligent review of the judgment on appeal (*O'Sullivan v O'Sullivan,* 94 AD2d 407, 409). But where the record does reveal sufficient evidence to afford an adequate review on appeal, the trial court's decision can be reviewed and modified by the Appellate Division (*Damiano v Damiano,* 94 AD2d 132; *Krivitzky v Krivitzky,* 94 AD2d 655; *Duffy v Duffy,* 94 AD2d 711). The record in this case is sufficient for such a review.

The factors which the court is mandated to consider are found in section 236 (part B, subd 5, par d) of the Domestic Relations Law as to disposition of property, and in section 236 (part B, subd 6, par a) as to maintenance. A number of these factors were listed in the court's decision and its detailed findings of fact, but there was no analysis or discussion to demonstrate how these factors influenced the court's determination and award: payment of a $45,000 lump sum, maintenance of $350 per week for three years, a

percentage of benefits under defendant's pension plan, one third of the proceeds of defendant's employment life insurance policy, and payment of plaintiff's medical insurance premiums for three years.

We have no quarrel with most of the trial court's findings of fact. But while there is no set formula for fixing maintenance and distributing marital property, the court must give some rationale for the conclusions of law drawn from those findings. In our view of the record, the award is in part excessive and in part without lawful basis.

This was a marriage of relatively short duration, without issue. The parties were married in New York City on May 17, 1980. Defendant, who is 27 years plaintiff's senior, had been recently widowed of his first marriage of 37 years. Plaintiff moved out of the marital residence at defendant's request two weeks after the marriage, returning in October, 1980, and staying until their final separation in September, 1981. The ground for divorce was defendant's constructive abandonment of plaintiff by refusing sexual relations. During the period of cohabitation the parties were each in generally good health. Plaintiff, who was found to have provided the services of a homemaker during the period of cohabitation, was employed prior and subsequent to the marriage, earning $17,550 per year at the time of the divorce. Defendant was employed during the marriage, earning at the time of the divorce a stated annual salary of $63,500 plus such benefits as employer-provided family Blue Cross/Blue Shield, major medical and dental coverage, a vested, noncontributory retirement pension plan worth $1,100 per month at the time of the divorce, and a life insurance policy worth one and one half times his salary to his beneficiary at the time of defendant's death. Defendant is also the beneficiary of a tax-deferred annuity plan to which he voluntarily contributed $545.54 every two weeks, which will provide him with $1,182 per month upon retirement, and which contains an option for guaranteed 10-year minimum half-benefits to his surviving spouse during her lifetime. Trial Term determined that defendant's total amount of contributions to this annuity was over $71,000, of which $19,441.85 was contributed during the marriage, a sum considered to be "marital property".

Of all the factors set forth in section 236 (part B, subd 5, par d; subd 6, par a) of the Domestic Relations Law, the most pertinent in this case appear to be those concerning the duration of the marriage and the lack of issue. The parties lived together during the marriage for less than a year, apparently under strained circumstances which did not facilitate the establishment of a normal standard of living (see Domestic Relations Law, § 236, part B, subd 6, par a, cl [6]; cf. *Jolis v Jolis,* 111 Misc 2d 965, 990, affd 98 AD2d 692).

In light of the limited relationship between the parties, and the fact that plaintiff was and has been a proven wage earner during contiguous periods outside the marriage, the trial court's award appears largely inflated in several respects.

■ The trial court awarded plaintiff $350 per week for three years. This amounts to nearly 27% of defendant's stated gross annual income from salary as vice-president of Lenox Hill Hospital of $63,500, with 8% yearly increases. In the light of plaintiff's income-producing capabilities as well as her comparatively minimal contribution to the household with no responsibilities for child care, it is patent that the size of this maintenance award was unjustified (cf. *Duffy v Duffy,* 94 AD2d 711). Trial Term's finding that defendant enjoys an "actual disposable real income of approximately $135,000.00 per annum" appears to be questionable.

Since defendant stated that he had filed no income tax returns for the previous three years, his actual income was unverifiable. Nonetheless, it is plain that defendant's real income substantially exceeds his stated salary. Thus, he receives full health benefits at no cost to himself and is the beneficiary of a noncontributory pension plan. Moreover, he receives other substantial perquisites including a nine room rent-free apartment, car service and maintenance, cut-rate laundry service, substantial gratuities from suppliers of Lenox Hill Hospital, including a T.V., camera, carpeting, gift certificates, free entertainment, and a host of other benefits. Although many of these items may not constitute disposable income, and are perhaps not quantifiable, they amount to real income. The dissent discounts

these items of real income, although they appear to total almost as much as defendant's reported income. Such benefits are to be weighed even though they may not fully justify the trial court's finding of $135,000 per annum disposable real income, on which the award of $350 per week maintenance for three years was apparently based (Domestic Relations Law, § 236, part B, subd 6, par a, cl [1]). In our view, a more appropriate award would be $200 per week for three years.

In so determining, we have also considered the change in plaintiff's income which came about as a result of the marriage and its termination. At the inception of the marriage plaintiff was self-supporting, working as an administrative assistant at Lenox Hill Hospital at a yearly salary of $16,130.10, plus health insurance, sick leave, vacation and other perquisites including annual increments of approximately 8%. She lived in a studio apartment at a monthly rental of $263. During the marriage she gave up her job and apartment to live with the defendant, with all the benefits attendant upon such status. Although plaintiff's standard of living plainly improved as a result of the marriage, this factor is of limited weight where the marriage is of such short duration and there are no issue, and the plaintiff is relatively young and capable of self-support. After the separation, plaintiff obtained employment as a secretary at a private school, at a salary of $15,600 per year, and worked for a physician at $7.50 per hour. Her rent at the time of trial was $387 per month. There is no indication that she will receive annual increments or any of the other benefits appurtenant to her prior Lenox Hill Hospital job. Obviously her return to a job at the hospital is unlikely, in view of the fact that the defendant is a vice-president of the hospital. Her current medical benefits are deducted from her salary.

It is plain that she is worse off economically since the marriage, and will require a period of time before improvement. Moreover, she has gone into debt to obtain furnishings and clothing due to defendant's retention of her private property.

Although this was a marriage of short duration and there is no issue of the marriage, she is entitled, at the

least, to be restored, to the extent possible, to the economic situation which pre-existed the marriage. Concededly, as a relatively young woman, 37 years of age, she is likely to be able to care for herself, albeit not at the marital level.

There was no need for an award for medical benefits over the three-year period for which support maintenance was awarded, albeit coverage now available to plaintiff is at her own expense and less extensive than that provided without cost while she was an employee at the hospital and as defendant's wife during the marriage. The trial court's award of medical insurance coverage for the next three years overlooks the fact that these benefits, now enjoyed by defendant as a result of his employment, are provided free of charge by his employer through various group plans at the hospital. They were available to plaintiff while she was employed at the hospital, before her marriage to defendant, and available to her as his wife while she was married to him, through the various group plans. However, for defendant to be required to provide such coverage for the plaintiff who is neither his wife nor an employee of the hospital would impose a substantial financial burden since she is no longer entitled to family coverage under these group plans.

The problem can best be met by giving it consideration both in fixing the weekly maintenance and in connection with determining the lump-sum payment, thus providing an appropriate vehicle to remedy the cutoff of such coverage (Domestic Relations Law, § 236, part B, subd 5, par d, cl [5]).

Trial Term directed that plaintiff be designated an irrevocable beneficiary under defendant's employee pension plan, to the extent of 8½% of the "ten year certain benefits upon defendant's demise". Such a pension plan does constitute marital property for purposes of equitable distribution, even where the benefits are not yet vested and the financing is of a noncontributory nature (*Damiano v Damiano,* 94 AD2d 132, *supra; Reed v Reed,* 93 AD2d 105). The rationale of these cases is that plaintiff is entitled to share in at least that portion of the pension plan benefits earned during the period in which she facilitated her husband's earnings of those future benefits through employment. The

question remains as to the precise degree of her interest in such benefit. The generally accepted formula is that the spouse should take no more than one-half interest in that portion of the net pension benefits at the time of retirement which represents that percentage of the entire period of the employee's participation in the pension plan in which the spouse actually lived with and provided spousal services to said employee (*Majauskas v Majauskas,* 94 AD2d 494, 497-498; *Hebron v Hebron,* 116 Misc 2d 803, 810). Thus, the formula requires two steps. First, a determination must be made as to that portion of the creation of the future pension in which the spouse had a direct influence. Normally this is figured by dividing the total number of months of the marital relationship during which the working member was covered by a pension plan, by the total number of months of credits the working member will have earned toward the pension as of the date of retirement.

■ It can be anticipated that defendant, now past 65, should be close to retirement. The longer he continues to work, the greater will be the divisor, which has the result of reducing the now-divorced spouse's interest in the ultimate pension benefits. At the time of trial, defendant had 25 years of employment under the pension plan, of which only about one and one-half years was during the marriage to plaintiff. This amounts to a 6% interest. The second step of the formula is to allocate such portion of the 6% interest to the homemaking spouse as reflects her contribution to the marriage during that period of the building of the pension fund. Under normal circumstances, the allocation would be one half, giving plaintiff in this instance a net 3% interest in the ultimate retirement fund. In *Hebron v Hebron (supra)*, the court found the spouse entitled to a one-third share in that portion of the fund, which in this case would amount to 2%. In either event, this would be considerably less than the 8½% awarded by the trial court, for which no justification appears. In light of plaintiff's limited contribution during the brief period of the marriage, we believe the 2% figure would be more appropriate. However we have concluded that this can best be covered by considering it in fixing the lump-sum equitable distribution award, and we have done so (*Damiano v Damiano, supra*).

■ Trial Term awarded plaintiff a one-third interest in defendant's life insurance policy, which consisted of a potential payment of one and one half times defendant's salary. This policy, provided by defendant's employer, was merely a fringe benefit of the employment in which the defendant had no vested interest. The employer apparently could withdraw or alter the coverage at any time. Inasmuch as the existence of this policy predated the marital relationship between the parties, future benefits under the policy could not be considered a marital asset, and thus should have played no part in the judgment at Trial Term.

■ Plaintiff asked for counsel fees of $15,000. The award of $9,500 is not unreasonable.

■ Trial Term ruled, without explanation, that all personal property should go to plaintiff. Defendant now argues that some of these items, including a silver fox jacket, belonged to his late first wife, and thus should not be given to plaintiff. But Trial Term found that defendant had actually given this jacket to plaintiff, and now was withholding it along with a number of other enumerated items which had belonged to plaintiff prior to this marriage.

■ All that remains is the lump-sum award which Trial Term fixed at $45,000. In light of the limited duration of the marriage, and plaintiff's proven and present capability to hold gainful employment and the other considerations discussed, we conclude the amount should be reduced to $15,000.

The dissent emphasizes plaintiff's relative youth, the short duration of the marriage, and the fact that plaintiff has now obtained new employment and found apparently satisfactory living quarters. It places undue emphasis on the fact that this was a "weak" marriage which did not work out. It does not give adequate consideration to the disruption of plaintiff's life, affecting her job and its prospects as well as her place of abode. Fault is not ordinarily to be considered a factor in connection with spousal maintenance and equitable distribution under the statute (see *Blickstein v Blickstein,* 99 AD2d 287). The divorce was granted on the ground of constructive abandonment by defendant, premised upon the refusal of sexual relations. However, in the circumstances of this case we do not deem

this to be a relevant factor and have not considered it in determining the right to spousal maintenance and equitable distribution or in fixing the amounts awarded.

In our view, the factors listed in section 236 (part B, subd 5, par d; subd 6, par a) of the Domestic Relations Law relative to spousal maintenance and equitable distribution do not intend a mere mathematical computation, which seems to be the tenor of the dissent. Section 236 (part B, subd 5, par d, cl [10]; subd 6, par a, cl [10]) prescribes that the court shall consider "any other factor which the court shall expressly find to be just and proper". This factor intending essential fairness justifies an award of equitable distribution as well as spousal maintenance which will give effect to the fact that plaintiff's economic situation and life style was disrupted by this marriage. Whatever the responsibility, it is she who gave up a good job, with a fine future and an appropriate dwelling place, and had to replace both. It is of some moment that there is no such change in the husband's way of life, albeit he is required to pay some money. While these factors may not lend themselves to precise mathematical formulation, essential fairness requires that they be recognized.

The dissent suggests that somehow a bonanza is being awarded to plaintiff, premising its contention on a pure mathematical formulation as to the value of one year's service as a wife. Even following that formulation, the total amount we award to plaintiff as equitable distribution and spousal maintenance, payable over a three-year period, appears to be less than defendant's unreported income for one year. Moreover, the dissent gives no consideration to plaintiff's entitlement to equitable distribution at least with respect to a portion of defendant's pension as marital property.

Accordingly, the judgment, Supreme Court, New York County (Andrew Tyler, J.), entered April 27, 1983, granting plaintiff a divorce and other relief, should be modified on the law and the facts to reduce the lump-sum payment, required to be paid by defendant to plaintiff, to $15,000, payable 30 days after service of a copy of the order to be entered hereon; to reduce the weekly maintenance payments to the sum of $200 per week, retroactive to January

4, 1982 and continuing for a period of three years; to eliminate the direction for maintenance of health and dental insurance for plaintiff's benefit; and to remove the direction that plaintiff be designated a beneficiary under defendant's life insurance and retirement/pension plan, and otherwise affirmed without costs.

KASSAL, J. (concurring in part, dissenting in part). This was a marriage of extremely short duration, the parties having actually resided together for less than one year. When they were married on May 17, 1980, plaintiff was 35 and defendant was 63 years of age, truly a May-December marriage. Each had been married previously, plaintiff for a little more than 2 years, defendant, a widower after 37 years of marriage, with grandchildren. It appears that this was a rather weak marriage, without any real foundation. In fact, they separated 2 weeks after the marriage and they resumed living together 4 months later. The final separation occurred 11 months thereafter. There was no opposition to the divorce, which was granted to plaintiff on the ground of constructive abandonment, based upon defendant's refusal to have sexual relations.

Contrary to the implication by the majority, my observation that this was a "rather weak marriage" does not attribute fault to either party. Fault has played no part in my determination and is not in issue in this case. However, I differ with the majority's interpretation of the holding in *Blickstein v Blickstein* (99 AD2d 287) as to the role of fault in regard to spousal maintenance. The court carefully limited its decision to the facts which were only concerned with equitable distribution of marital property. The opinion expressly states: "[W]e recognize that the role of marital fault may be different in the context of fixing an award of maintenance * * * However, in view of the fact that an award of maintenance was not sought in the case at bar, *we do not pass upon the issue*" (emphasis added).

At the time the parties were married, plaintiff worked as an administrative assistant at Lenox Hill Hospital, earning $16,120 annually, plus health insurance. She lived in a small apartment with a monthly rental of $263. Defendant at the time of the trial was the purchasing agent at Lenox Hill Hospital, earning $63,500 per year, which was subject

to a yearly increase of 6%. He received several substantial additional benefits, including major medical insurance, pension and annuity, limousine service, theatre tickets, entertainment, etc. His assets included a bank account of $12,000, $35,000 in tax free bonds and life insurance with a cash surrender value of $3,500.

After their separation, plaintiff obtained a secretarial position at the Hewitt School, with an annual salary of $15,600, plus annual increments of 10%. She also receives major medical coverage and disability insurance as incidents of employment. Her school day ends at 4:00 P.M., on Friday at 3:00 P.M. and, in the summer, at 3:00 P.M. and on Friday at 2:00 P.M., shorter hours than when she had worked at Lenox Hill Hospital. She also works 4 or 5 hours per week as a typist for a doctor at $7.50 per hour, earning $30 to $37.50 per week or about $1,500 per annum. Her new apartment has a monthly rental of $387, which is $125 more than the rent for her previous apartment.

I agree that plaintiff should be entitled to maintenance for a very limited period of time. However, I disagree with my colleagues and find this to be an inappropriate case for any equitable distribution award. I also find the amount awarded to be excessive and unwarranted. On this record, there should be a maintenance award, consisting of a lump sum sufficient to permit the wife to re-establish herself as well as an adequate weekly sum to supplement her income for a limited period of time. For the lump amount, I would award a sum of $10,000, which, together with the personal property awarded by Special Term, will enable her to refurbish and refurnish her apartment and replace any other personal property she had prior to the marriage. Limited weekly maintenance will enable her to re-establish herself to her pre-existing standard, taking into account, salary, medical and similar benefits. I would award her the weekly sum of $100 for a period of two years. In my judgment, these would fairly and adequately restore her to her previous condition. Maintenance should be limited to a lump-sum payment of $10,000 and a weekly sum of $100 for a period of two years.

The several factors which lead me to this conclusion are: the brief duration of the marriage, less than one year;

plaintiff's present salary at Hewitt School, almost comparable to the previous salary but with less hours and with the mandated 10% salary increases, plus her part-time employment, results in total earnings about the same as she would be earning at Lenox Hill Hospital; the parties' ages, the defendant is 65 years of age, has 1 child and 6 grandchildren, while plaintiff is 37 years of age; and, the fact that there are no children of this marriage. Her reasonable needs remained essentially unchanged as a result of the marriage; she has sufficient income with the limited weekly maintenance awarded to provide for her needs; her earning capacity and potential have not suffered and the marriage was too brief for plaintiff to have been greatly dependent on defendant; no period of readjustment or training is required for her to be self-supporting as before. Finally, consideration must be given to essential fairness and equity to both sides, incorporated within the "catch-all" factor, "any other factor which the court shall expressly find to be just and proper" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]; subd 6, par a, cl [10]).

It is patently clear that this is a marriage which, quite simply, did not work out, without any real fault attributable to either party. Concededly, the necessary elements for a permanent and lasting relationship were lacking. On the basis of the sums which I would award to plaintiff, she will have two years to rehabilitate herself (although financially she has almost done that now), build a new life and, with the undisturbed direction by the Trial Justice that she receive all of the personal property specified in the judgment, at the end of two years, she will be more than adequately compensated and rehabilitated. She is still young and her present and future earning capacity have not been impaired since she requires no period of time or training to enable her to be self-sufficient. She already is.

The record does not support a lump-sum award and annual maintenance to the extent directed by the majority. Equitable distribution was not intended to be a bonanza. For equitable distribution purposes, the fact of marriage, in and of itself, does not automatically vest property rights in the other spouse's estate, irrespective of consideration of

fairness and equity and the factors enumerated in part B of section 236 of the Domestic Relations Law. Rather, equitable distribution has, as its basis, the distribution of marital property, keeping in mind the "direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]). Here, the record does not reflect any such effort or contribution by the plaintiff. Quite simply, this is a marriage of short duration which did not work and should not result in either a penalty or a reward. The only equitable disposition would be to return the parties to *status quo ante*.

The trial court's award of $99,600 ($45,000 lump sum and $350 in weekly maintenance for three years, or a total of $54,600) is clearly excessive. The majority's reduction of this award to $46,200, consisting of a lump-sum payment of $15,000 as "equitable distribution" and $200 in weekly "spousal maintenance" (also for three years) is also disproportionate and unwarranted in applying the statutory factors.

Asch, J. P., Silverman and Lynch, JJ., concur with Fein, J.; Kassal, J., concurs in part and dissents in part in an opinion.

Judgment, Supreme Court, New York County, entered on April 27, 1983, modified on the law and the facts to reduce the lump-sum payment required to be paid by defendant to plaintiff, to $15,000, payable 30 days after service of a copy of this court's order, and to reduce the weekly maintenance payments to the sum of $200 per week retroactive to January 4, 1982, and to continue for a period of three years and to eliminate the direction for maintenance of health and dental insurance for plaintiff's benefit and to remove the direction that plaintiff be designated a beneficiary under defendant's life insurance and retirement/pension plan, and otherwise affirmed, without costs and without disbursements.