# Margaret Otto, Respondent, v Richard Otto, Appellant.

Second Department, September 11, 1989

58

### APPEARANCES OF COUNSEL

*Wendy Rodes* for appellant.

*Nicolosi & Sciacca (Joseph J. Sciacca* of counsel), for respondent.

### OPINION OF THE COURT

BALLETTA, J.

The case at bar involves a situation which occurs on a daily basis in the courts of this State, to wit, the granting of judgments of divorce upon the default of one of the parties. Under the circumstances of this case, where the default judgment of divorce contains provisions for equitable distribution, maintenance and/or child support, the court should hold an inquest to enable it to grant a judgment which complies with the mandates of Domestic Relations Law § 236 (B). The precise form of the inquest will be determined by the trial court in its sound discretion dependent upon the circumstances of the case and the nature of the default.

The parties herein were married on October 5, 1974, and have two children, Richard, born February 27, 1976, and Robyn, born June 9, 1978. The plaintiff commenced the instant action for divorce by the personal service of a summons upon the defendant on or about December 31, 1983. Subsequently a complaint, and thereafter an amended complaint were served and issue was joined in July 1984. In her complaint, the plaintiff sought a divorce on the ground of cruel and inhuman treatment, custody of the two infant children, exclusive possession of the marital residence located in College Point, New York, child support of $75 per week per child, maintenance of $100 per week, and equitable distribution of marital property.

The plaintiff was awarded child support pendente lite of $60 per week in an order of the Supreme Court, Queens County (Miller, J.), dated October 2, 1984. However, her requests for exclusive possession of the marital residence and maintenance

pendente lite were denied. The court noted that the plaintiff and the children were living with her parents and that she was earning $200 per week. It was also noted that the marital premises was occupied by a tenant.

By an order dated June 27, 1985, the Supreme Court, Queens County (Berkowitz, J.), granted the plaintiff's motion to strike the defendant's answer unless he furnished a net worth statement within 20 days after the service of a copy of the order upon him. A copy of the order was served upon the defendant's attorney on or about July 16, 1985; however, the defendant failed to provide the requisite net worth statement.

A year and a half later, in January 1987 the plaintiff applied to the court for a judgment granting her a judgment of divorce on the defendant's default in furnishing the net worth statement, and awarding her various ancillary relief including custody of the two children, maintenance of $200 per week and child support of $300 per week, exclusive title and occupancy of the marital residence in Queens County and of a parcel of real property located in Stoney Creek, New York, counsel fees of $5,000 and arrears of pendente lite child support. She submitted no documentary proof and her affidavit was insufficient to support the relief requested. The defendant's attorney Ronald B. Hellman cross-moved to be relieved as his counsel.

The Supreme Court, Queens County (Zelman, J.), by an order dated February 17, 1987, stated that the plaintiff's "unopposed" motion was "denied with leave to put this matter on the uncontested matrimonial calendar". A hearing on the plaintiff's request for arrears of child support was set down for March 11, 1987, and the remaining issues were referred to the trial court. The court also stated, "The parties are directed to proceed to trial as expeditiously as possible". No mention was made of the cross motion of the defense counsel to be relieved, nor is it discernible from the record whether the papers on the cross motion were ever submitted to the court.

Thereafter, on or about February 27, 1987, a note of issue and a copy of Justice Zelman's order were served upon Mr. Hellman. No date was set down for the hearing directed by Justice Zelman; rather, the plaintiff submitted a proposed judgment together with proposed findings of fact and conclusions of law. A copy of the documents was purportedly served on Mr. Hellman; however, the date of service on the affidavits of service was left blank so it cannot be determined if, or

when, they were served. No notice of settlement appears in the record.

In any event, the judgment of divorce, the findings of fact, and conclusions of law were signed by Justice Ambrosio on March 23, 1987. The judgment granted a divorce to the plaintiff on the ground of cruel and inhuman treatment, and, *inter alia,* (1) awarded her custody of the two children; (2) directed the defendant to pay maintenance of $200 per week for the plaintiff's lifetime and child support of $300 per week; (3) directed the defendant to transfer title to the marital residence and the Stoney Creek property to the plaintiff; (4) directed the defendant to provide major medical, hospitalization, dental and life insurance; and (5) directed the defendant to pay attorney's fees of $5,000. The judgment also granted the plaintiff an award for arrears in the sum of $5,880 despite the fact that there was no evidence that a hearing had been held thereon as directed by Justice Zelman. The court's findings of fact were limited to the cause of action for a divorce. A copy of the judgment was served upon the defendant on or about April 14, 1987.

The defendant eventually made a motion to set aside his default pursuant to CPLR 5015 (a) (1) but only after the plaintiff had sought a number of ex parte orders seeking to enforce the provisions directing the transfer of the properties. The defendant's new attorney asserted that she had been retained in December 1987, that the defendant did not seek to set aside "that portion of the default judgment which granted Plaintiff a divorce", and that the defendant sought "a hearing to reassess the economic and equitable distribution portions of the case". The defendant provided a net worth statement which he had previously failed to supply, and in his affidavit, the defendant claimed that he had been suffering from thyroid disease, and that "the symptoms of this disease and the side effects of my medication caused me to fall into deep depression, suffer memory loss and loss of motor coordination". Justice Ambrosio, in the order appealed from, denied the motion to vacate the default.

In light of the generally liberal policy of vacating defaults in matrimonial actions *(see, Antonovich v Antonovich,* 84 AD2d 799) and for the reasons more fully set forth below, the economic provisions of the judgment herein must be set aside and the case remitted to the Supreme Court, Queens County, for a hearing on those issues *(see also, Lucas v Lucas,* 109 AD2d 781).

Domestic Relations Law § 236 (B) requires any court making an award of equitable distribution, maintenance, or child support to consider certain enumerated factors (Domestic Relations Law § 236 [B] [5] [d] [1]-[13]; [B] [6] [a] [1]-[11]; [B] [7] [a] [1]-[5]). Moreover, in making any decision relative to equitable distribution, maintenance or child support, the court must set forth the factors that it considered and the reasons for its decision, "and such may not be waived by either party or counsel" (Domestic Relations Law § 236 [B] [5] [g]; [B] [6] [b]; [B] [7] [b]; *see also, Capasso v Capasso,* 119 AD2d 268, 272; *Jensen v Jensen,* 110 AD2d 679, 680).

The legislative purpose behind this mandatory and nonwaivable requirement is twofold: to prevent the arbitrary exercise of discretion and to provide the basis for appellate review where discretion is improvidently exercised *(see,* Foster, *Commentary on Equitable Distribution,* 26 NY L Sch L Rev 1, 50-51, 59 [1981]; *Duffy v Duffy,* 94 AD2d 711, 712). "Unless the trial judge reveals not only the factors he considered, but also his reasoning for the award made, intelligent review of the broad discretion entrusted to him is not possible" *(see, O'Brien v O'Brien,* 66 NY2d 576, 589).

Thus, in *Gainer v Gainer* (100 AD2d 533), where the husband appealed from a judgment of divorce rendered after a nonjury trial, this court held the appeal in abeyance and remitted the matter to the trial court for compliance with the statutory provisions, stating: "Special Term failed to set forth either in its decision or judgment, the statutory factors it considered in distributing the parties' marital property (Domestic Relations Law, § 236, part B, subd 5, par d), and in awarding maintenance (Domestic Relations Law, § 236, part B, subd 6, par a), and child support (Domestic Relations Law, § 236, part B, subd 7, par a). It is mandatory that the court set forth these statutory factors together with the reasons for its decision (see *Hornbeck v Hornbeck,* 99 AD2d 851; *Durso v Durso,* 99 AD2d 478; *Nielsen v Nielsen,* 91 AD2d 1016)" *(see also, Chasnov v Chasnov,* 131 AD2d 624; *Gape v Gape,* 110 AD2d 621; *Arvantides v Arvantides,* 97 AD2d 939; *O'Sullivan v O'Sullivan,* 94 AD2d 407).

As a corollary, where the trial court fails to hear sufficient evidence to permit it to make a proper determination on the economic issues, the economic provisions of a divorce judgment will be vacated and the matter remitted for a new trial on those issues *(see, Cassano v Cassano,* 111 AD2d 208). For

example, in *Annis v Annis* (147 AD2d 668), the court remitted the matter to the Supreme Court, Westchester County, for a further hearing to determine whether certain assets were marital property, to place a value thereon, and to distribute the same. The court noted in *Annis v Annis (supra,* at 670):

"Domestic Relations Law § 236 (B) (5) (g) requires that: '[i]n any decision made pursuant to this subdivision, the court *shall* set forth the factors it considered and the reasons for its decision and such may not be waived by either party or counsel' (emphasis supplied). In the instant case, although the court alluded to some of the facts, it failed to adequately set forth in a clear and comprehensive manner the factors it considered in determining the respective rights of the parties in their separate or marital property or the reasons for its decision as required *(see, Chasnov v Chasnov,* 131 AD2d 624; *Harrell v Harrell,* 120 AD2d 565; *Coffey v Coffey,* 119 AD2d 620; *Paolini v Paolini,* 99 AD2d 742; *D'Amato v D'Amato,* 96 AD2d 849).

"Although this court has the authority to make the necessary determinations *(see, Majauskas v Majauskas,* 61 NY2d 481, 493-494, *supra; Kobylack v Kobylack,* 111 AD2d 221), we decline to do so absent a detailed record of the court's reasoning" *(see also, Bizzarro v Bizzarro,* 106 AD2d 690).

The Appellate Division, Fourth Department, stated in *Norgauer v Norgauer* (126 AD2d 957, 957-958): "In this divorce action, the court distributed marital assets without the benefit of any testimony concerning the financial circumstances of the parties or documents revealing the value of all of the claimed marital property. The court also failed to set forth the factors it considered and the reasons for its decision (Domestic Relations Law § 236 [B] [5] [g]). Thus, the judgment, insofar as it determines the property rights of the parties, is vacated, and the matter is remitted to the trial court for proper consideration and findings regarding the statutory factors (Domestic Relations Law § 236 [B] [5] [d]) following a hearing on all of the issues pertaining to equitable distribution *(Diachuk v Diachuk,* 117 AD2d 985, 986)".

In *Ettinger v Ettinger* (107 Misc 2d 675), the Supreme Court, Nassau County (McCaffrey, J.), directly addressed the question of the proper procedure to be followed in equitable distribution cases where a default judgment is obtained, and determined that the statutory requirements must still be complied with:

"The court further finds that it is under a mandate pursuant to section 236 (part B, subd 5, par d, cl [6]) of the Domestic Relations Law to determine the respective rights of the parties in their separate or marital property, notwithstanding the fact that one of the parties has defaulted. For to do otherwise, simply because one side defaults, would give to the party choosing not to appear an advantage in defaulting and constitute a prejudice to the party seeking equitable distribution. * * *

"The statute makes no distinction between a contested matter and one in which there has been a default by one of the parties. The court appears to be required, even where there is an inquest taken on the nonappearance of a party, to consider the above factors when it equitably disposes of marital property in the final judgment. * * *

"In view of the requirements imposed upon the court by the provisions of subdivisions 5, 6 and/or 7 of part B of section 236, it becomes apparent even in a situation where there is a defaulting party that the record established must be at least as extensive to permit the court to make its determination based upon its consideration of the aforesaid factors as they apply to the relief granted.

"With this in mind, then, prior to the inquest being taken the court required the plaintiff to submit a statement of particulars fairly tracking the subject matter which makes up the factors required to be taken into consideration. The plaintiff at the inquest then submitted into evidence her statement of particulars and testified along the lines of the provisions of section 236 (part B, subds 5, 6, 7) of the Domestic Relations Law so that the court would have for its consideration a record complete enough to comply with the aforesaid statutory requirements. It is upon just such a record that the court bases its decision in this case" (Ettinger v Ettinger, supra, at 676-679).

Ettinger (supra) should be compared with the earlier case of Hetler v Hetler (98 Misc 2d 529), which, relying upon Domestic Relations Law § 211, held that a default judgment of divorce could be entered solely upon written papers. Domestic Relations Law § 211 had been amended in 1978 to provide in part that a "final judgment shall be entered by default * * * only upon competent oral proof or upon written proof that may be considered on a motion for summary judgment". However, both the amendment to Domestic Relations Law § 211 and

*Hetler* predate equitable distribution, and do not deal with the mandatory requirements of Domestic Relations Law § 236 (B). Moreover, *Hetler* itself pointed out that any submitted papers "should set forth the evidentiary facts sustaining the cause of action and any ancillary relief, such as custody, visitation, alimony and support requested. For instance, if child support is requested, the parent's ability to pay must be shown" *(Hetler v Hetler, supra,* at 531).

The case of *Grande v Grande* (129 AD2d 612) is somewhat analogous to the situation in the case at hand. The defendant wife in *Grande* had refused to comply with various disclosure orders, and as a result, the Supreme Court struck her answer and counterclaim and set the matter down for an inquest. There was no order precluding the defendant from offering proof for failure to comply with disclosure orders. This court held that it was error for the trial court to bar the defendant from taking any part in the inquest. Accordingly, the case was remitted for a new inquest as to the economic issues for the following reasons:

"Although no order was issued precluding the defendant from offering proof at the inquest, the trial court barred counsel for the defendant, over objection, from taking any part in the inquest proceedings. This was error *(see, Napolitano v Branks,* 128 AD2d 686). Assuming, arguendo, that an order precluding the defendant from offering proof at the inquest may have been warranted in this case *(see, Reynolds Sec. v Underwriters Bank & Trust Co.,* 44 NY2d 568, 571-574; *Reed v Reed,* 93 AD2d 105, 108, *appeal dismissed* 59 NY2d 761), the circumstances did not justify denying the defendant the right to cross-examine the plaintiff's witnesses.

"Accordingly, a new inquest must be held, prior to which the defendant shall have a final opportunity to disclose the requested materials insofar as they relate to the economic issues, and to appear for an examination before trial *(see, Reynolds Sec. v Underwriters Bank & Trust Co., supra,* at 573-574). Should disclosure not be forthcoming, the appropriate remedy in this case is to preclude the defendant from offering proof at the inquest" *(Grande v Grande, supra,* at 613).

The *Napolitano* case *(Napolitano v Branks,* 128 AD2d 686, *supra)* cited by the *Grande* court was a personal injury action in which this court reversed a default judgment and remitted the matter for a new inquest on damages. The defendants' answer had been stricken for failure to comply with a discov-

ery order, and at the original inquest the trial court refused to allow the defense counsel to participate in the inquest or to cross-examine the plaintiff's witnesses. This was error, for the following reasons: "As the Court of Appeals has observed, 'a defendant whose answer is stricken as a result of a default admits all traversable allegations in the complaint, including the basic allegation of liability, but does not admit the plaintiff's conclusion as to damages' *(Rokina Opt. Co. v Camera King,* 63 NY2d 728, 730; *see also, McClelland v Climax Hosiery Mills,* 252 NY 347, 352; *Winson Gems v D. Gumbiner, Inc.,* 85 AD2d 69, 71, *affd* 57 NY2d 813). Where entry of a default judgment against a defendant is made after an application to the court, as here *(see,* CPLR 3215 [b]), the defendant is entitled to 'full opportunity to cross-examine witnesses, give testimony and offer proof in mitigation of damages' *(Reynolds Sec. v Underwriters Bank & Trust Co.,* 44 NY2d 568, 572; *see also, Rokina Opt. Co. v Camera King, supra,* at 730)" *(Napolitano v Branks,* 128 AD2d 686, 687, *supra).*

Furthermore, it is well settled that where " 'the damages sought cannot be determined without extrinsic proof' ", an inquest must be ordered *(see, Gaylord Bros. v RND Co.,* 134 AD2d 848, 849; *Falso v Norton,* 89 AD2d 635; *Wine Antiques v St. Paul Fire & Mar. Ins. Co.,* 40 AD2d 657).

Certainly, the complexity of the factors required to be considered when awarding equitable distribution of property, maintenance or child support in a matrimonial action also necessitates an inquest. For instance, in awarding equitable distribution, a court must distinguish between marital and separate property, place a value thereon, and thereafter distribute each marital asset *(see,* Domestic Relations Law § 236 [B] [5] [a]; *Roberts v Roberts,* 138 AD2d 791). In so doing, a court may also be required to determine the best method of valuation (e.g., as where a close corporation is involved) and the appropriate date for valuation *(see, e.g., Wegman v Wegman,* 123 AD2d 220). Moreover, "[i]n valuing property, it is not enough that the court's decision merely fix value without making further findings as will show how the value fixed was ascertained * * * effective appellate review in an equitable distribution action cannot be had on valuations amounting to nothing more than mere conclusions" *(see, Capasso v Capasso,* 119 AD2d 268, 273, *supra).*

In *Diachuk v Diachuk* (117 AD2d 985), the Appellate Division, Fourth Department, was apparently confronted with a situation very similar to that which faces us in the instant

case. There it was held that the trial court "did not err in denying defendant's motion to vacate a default judgment of divorce because defendant failed to establish a meritorious defense" *(Diachuk v Diachuk, supra,* at 985). However, the economic provisions of the judgment had to be vacated and the matter "remitted to the trial court for a hearing on the issue of equitable distribution, and for appropriate findings of fact and conclusions of law as required by statute" *(Diachuk v Diachuk, supra,* at 986). The rationale for this was that: "in determining the distribution of the parties' property, the court made no findings of fact, nor did it 'set forth the factors it considered and the reasons for its decision' (Domestic Relations Law § 236 [B] [5] [g]). Such findings and reasons may not be waived by either party (Domestic Relations Law § 236 [B] [5] [g]). Consequently, the judgment, insofar as it determines the property rights of the parties, cannot stand *(Conde v Conde,* 96 AD2d 747; *Hanford v Hanford,* 91 AD2d 829, 830)" *(Diachuk v Diachuk, supra,* at 986).

The court in *Diachuk* also noted that prior to the entry of the judgment, the trial court had allowed the defendant to submit a financial affidavit, yet, despite the conflicting allegations between the parties' affidavits, failed to hold a hearing. Thus, it was directed that "upon remittitur, the trial court should hold a hearing to allow defendant to develop his allegations as to the respective financial circumstances of the parties *(see, Cocchia v Cocchia,* 74 AD2d 592, 593)" *(Diachuk v Diachuk, supra,* at 986). The court noted that its determination did "not affect that portion of the judgment that granted plaintiff a divorce on the ground of cruel and inhuman treatment" *(Diachuk v Diachuk, supra,* at 986).

The *Cocchia* case cited in *Diachuk* was a preequitable distribution case in which the Supreme Court had issued an order denying a motion by the defendant husband to vacate a default judgment of divorce. This court modified the order to the extent of granting the defendant "a hearing at which he may appear and offer evidence on the limited question of the propriety of the economic provisions of the judgment" subject to the conditions that (1) the judgment stayed in effect until modified and (2) the defendant complied with the judgment. The remainder of the decision went on to state: "The liberal policy of this court with respect to vacating defaults in matrimonial actions *(Pisano v Pisano,* 71 AD2d 670; *Levy v Levy,* 67 AD2d 998; *Hewlett v Hewlett,* 63 AD2d 977), even where only limited relief is available *(Rutledge v Rutledge,* 60 AD2d 646),

requires that defendant be afforded a hearing concerning his allegations as to the respective financial capabilities of himself and plaintiff. Should it be established that the provisions for alimony and child support are onerous, then Special Term should vacate those provisions of the judgment. However, such a determination would not affect the provisions of the judgment which granted plaintiff a divorce on the ground of cruel and inhuman treatment" *(Cocchia v Cocchia, supra,* at 593; *see also, Ximines v Ximines,* 149 AD2d 584; *Bustamante v Bustamante,* 144 AD2d 418).

Similarly, it has been stated that "where the refusal [to grant an adjournment] results in a default judgment on both the divorce issues and economic issues, a liberal policy exists, at least as to vacateur on the economic issues. *Sound policy reasons exist for this position as equitable distribution, in all fairness, should not be made upon a default. Practically speaking, it may be more difficult to establish a prima facie economic case where the title holding spouse is in default"* (see, 3 Foster, Freed and Brandes, Law and the Family New York § 11:7, at 486 [2d ed] [emphasis added]).

At least one trial court has recognized the efficacy of allowing a defaulting spouse to participate in the inquest on the economic issues of the divorce action. The issue in the case of *Orlan v Orlan* (NYLJ, June 11, 1982, at 17, col 6) was whether the defendant, whose answer had been stricken for failure to comply with various disclosure orders, was entitled to an examination before trial of the plaintiff. The court held that while a defaulting party may conduct examinations before trial under certain circumstances, the defendant there had failed to show a need for conducting a deposition. In discussing the issue, the court stated:

"This court holds, insofar as is necessary to reach the issue here presented, that such issues as equitable distribution of marital property, maintenance and child support, the so-called economic issues, are not traversable and upon a default of one party the defaulting party is entitled to participate in the inquest for the purpose of assisting the court in making a proper determination on the economic issues.

"It is critical to hear evidence presented by both sides with respect to the factors involved in the economic issues (see D.R.L. sec. 236, Part B, subds. 5, 6 and 7). Otherwise it would be pointless and absurd to make a determination on the economic issues which are oppressive to the defaulting party

to the point that they are unenforceable under the discretionary enforcement provisions of the Domestic Relations Law and other laws (see, e.g., D.R.L. sec. 244 and 245; Personal Property Law, sec. 49b; Judiciary Law, sec. 756)" *(Orlan v Orlan,* NYLJ, June 11, 1982, *supra,* at 18, col 1).

A rule allowing a defaulting party to participate in an inquest on economic matters would be harmonious with the purposes of the Equitable Distribution Law. As stated in *Rodgers v Rodgers* (98 AD2d 386, 391 [emphasis added]): "In a divorce proceeding, which triggers the right to equitable distribution, property acquired during marriage need not be distributed equally, but, rather, 'in a manner which reflects the individual needs and circumstances of the parties' (Memorandum of Governor Carey, 1980 McKinney's Session Laws of NY, p 1863). Unlike a community property regime, *fairness,* not mathematical precision, *is the guidepost.* Under equitable distribution, a court possesses flexibility and elasticity to mold an appropriate decree because what is fair and just in one circumstance may not be so in another (cf. *Perri v Perri,* 97 AD2d 399)" *(see also, Price v Price,* 69 NY2d 8, 14-15; *O'Brien v O'Brien,* 66 NY2d 576, 584-585, *supra).* "Equitable distribution, as a remedy in marital actions, is not designed either to result in a penalty or a windfall. The fact of marriage, standing alone, does not automatically vest property rights in the assets or estate of the other spouse. Rather, the determination in each case must be individual, based upon the circumstances presented and the considerations of fairness and equity in terms of the several factors enumerated in Domestic Relations Law § 236 (B)" *(see, Cappiello v Cappiello,* 110 AD2d 608, 609, *affd* 66 NY2d 107).

In light of the foregoing, when a judgment of divorce is being granted on the default of one of the parties, an inquest should be taken on the economic issues, with the extent of the inquest to be determined by the court in the exercise of its sound discretion *(see also, Meisl v Meisl,* — AD2d — [decided herewith]; *Kurtz v Kurtz,* — AD2d — [decided herewith]). The inquest may be in the nature of a hearing or, in the alternative, may be by way of the submission of written proof through the use of affidavits and other documentary evidence sufficient to provide the requisite evidentiary and factual basis required for the Judge to make the appropriate findings pursuant to Domestic Relations Law § 236 (B) *(see,* 22 NYCRR 202.46 [b]).

The inquest should be scheduled with notice given to the

defaulting party in such a manner as may be directed by the court *(see, McClelland v Climax Hosiery Mills,* 252 NY 347, 351). However, it should be noted that where the defaulting party has failed to make any appearance in the action, he or she may not be entitled to notice of the inquest *(see,* CPLR 3215 [f]; *Kraus Bros. v Hoffman & Co.,* 99 AD2d 401).

A defaulting party who appears at the inquest should ordinarily be entitled to fully participate therein by presenting his or her own witnesses and evidence, and cross-examining the other side's witnesses *(see, Grande v Grande,* 129 AD2d 612, *supra; Napolitano v Branks,* 128 AD2d 686, *supra),* unless, of course, the defaulting party has been previously precluded from doing so *(see, Reed v Reed,* 93 AD2d 105; *cf., Grande v Grande, supra),* in which case the court may, in its discretion, limit the defaulting spouse's participation to the cross-examination of witnesses. The trial court may also attach any other conditions to the inquest as it deems appropriate, such as requiring examinations before trial and the filing of financial statements *(see, Ayala v Boss,* 120 Misc 2d 430). If the defaulting party has totally failed to make an appearance in the action or simply failed to appear at the inquest, the trial court, as noted above, may conduct the inquest by oral examination or by the submission of written proof by the party seeking the judgment. In any event, the trial court must take sufficient evidence in order to intelligently make the necessary findings and state the reasons therefor in its decision in accordance with Domestic Relations Law § 236 (B).

Turning now to the case at bar, the economic provisions of the judgment must be set aside since the court failed to set forth, as it is mandated to do, the statutory factors it considered in distributing the parties' marital property (Domestic Relations Law § 236 [B] [5] [d]), and in awarding maintenance and child support (Domestic Relations Law § 236 [B] [6] [a]; [B] [7] [a]; *see also, Chasnov v Chasnov,* 131 AD2d 624, *supra).* The fact that the judgment was one entered upon default does not obviate the need to comply with the obligations imposed upon the court by the statute *(see, Ettinger v Ettinger,* 107 Misc 2d 675, *supra).*

Moreover, remittal is necessary since there was insufficient evidence in the record to permit this court to make a proper determination as to the awards of equitable distribution, maintenance or child support *(see, Cassano v Cassano,* 111 AD2d 208, *supra).* The court herein took no testimony and merely signed a judgment which awarded the plaintiff every-

thing that she requested despite the fact that there was little or no support for her requests in her papers *(see, Capasso v Capasso,* 119 AD2d 268, 275, *supra* ["We also find an error of law in the trial court's wholesale, verbatim adoption of the husband's requests for findings"]).

Thus, the judgment awarded the plaintiff maintenance and child support amounting to a total of $500 per week (or $26,000 per year) even though the plaintiff demanded in her complaint a total of $250 a week for maintenance and child support, and a pendente lite order provided for $60 a week child support, and no maintenance on the ground that the plaintiff earned the sum of $200 per week. Furthermore, there was no evidence that the defendant earned enough to pay the amount awarded. In fact, the defendant's pay stub for the pay period ending December 22, 1987, shows that he had earned only $20,950.88 in 1987 up until that date, and there is nothing in the record by way of affidavit to indicate that the plaintiff was not still earning at least $200 per week. Furthermore, the court's award of maintenance of $200 per week was for the plaintiff's lifetime even though she was only approximately 30 years old, in good health, and apparently capable of working *(see, Armando v Armando,* 114 AD2d 875). The court also apparently awarded the plaintiff 100% of the marital assets without placing a value thereon or determining the parties' respective rights in the assets *(see, Bizzarro v Bizzarro,* 106 AD2d 690, *supra; Capasso v Capasso,* 119 AD2d 268, *supra).* Finally, there was no substantiation for the award of $5,000 in counsel fees *(see, Sadofsky v Sadofsky,* 78 AD2d 520).

Accordingly, the order appealed from is reversed, the defendant's motion is granted to the extent that the fourth through eleventh decretal paragraphs of the judgment dated March 23, 1987, are vacated, and the matter is remitted to the Supreme Court, Queens County, for an inquest on the economic issues, including equitable distribution of property, maintenance and child support, counsel fees, and arrears of pendente lite child support and for a new determination of those branches of the defendant's motion which are for relief pursuant to CPLR 5015 (a) (5) in accordance herewith. Since there is no order precluding the defendant from doing so *(see, Reed v Reed, supra),* the defendant has the right at the inquest to present evidence on the economic issues as well as to cross-examine the plaintiff's witnesses *(see, Schutzer v Berger,* 40 AD2d 725; *see also, Grande v Grande,* 129 AD2d 612, *supra).*

The court takes specific note of the sale of the property in

Stoney Creek, New York, and nothing herein is meant to disturb that sale. Rather, the trial court is directed to take into account the money expended by the plaintiff in connection with the property and any amounts received by her when making a determination as to equitable distribution of the parties' marital assets, which would include the proceeds of the sale of the Stoney Creek property.

While we are cognizant that in some cases we have continued the provisions of a judgment pending a hearing and new determination (see, e.g., *Rutledge v Rutledge,* 60 AD2d 646), in the absence of any evidence that the defendant herein can comply with the amended judgment, we direct that pending the inquest and entry of an appropriate amended judgment, the defendant is to make child support payments provided for in the pendente lite order dated October 2, 1984.

The reversal of the order appealed from is made on condition that within 60 days after service upon him of a copy of this opinion and order, the defendant pay the plaintiff the sum of $3,000 to be credited towards any arrears of maintenance and child support as may be found by the trial court after an inquest, and pay the sum of $2,000 to the plaintiff's attorneys to be credited towards any award for counsel fees that may be granted to the plaintiff. We find these amounts to be appropriate in view of the defendant's dilatory conduct. Although the policy of the court has been to liberally open defaults in matrimonial cases, the defendant's conduct herein was willful and nothing in this opinion is meant to indicate that we condone his actions.

LAWRENCE, J. P., HARWOOD and ROSENBLATT, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, the defendant's motion is granted to the extent that the fourth through eleventh decretal paragraphs of the judgment of the same court dated March 23, 1987, are vacated, on condition that, within 60 days after service upon the defendant of a copy of this decision and order, the defendant pay the plaintiff $3,000 to be credited towards any arrears of maintenance and child support as may be found by the trial court after an inquest, and pay the plaintiff's attorneys $2,000 to be credited towards any award for counsel fees that may be granted to the plaintiff; and it is further,

Ordered that the matter is remitted to the Supreme Court, Queens County, for an inquest on the economic issues, including equitable distribution of property, maintenance and child

support, counsel fees, and arrears of pendente lite child support, and for a new determination of those branches of the defendant's motion which are for relief pursuant to CPLR 5015 (a) (5), in accordance herewith; and it is further,

Ordered that pending the inquest and entry of an appropriate amended judgment, the defendant is to make the child support payments provided for in the pendente lite order dated October 2, 1984; and it is further,

Ordered that in the event that the defendant does not comply with the aforementioned conditions, the order is affirmed, with costs.