[64 NYS3d 17]

LINDA G., Respondent, v JAMES G., Appellant.

First Department, November 14, 2017

### APPEARANCES OF COUNSEL

*Kantor, Davidoff, Mandelker, Twomey, Gallanty & Kersten, P.C.*, New York City (*Matthew C. Kesten* of counsel), for appellant.

*Goldweber Epstein LLP*, New York City (*Nina S. Epstein* and *Aimee L. Davis* of counsel), for respondent.

### OPINION OF THE COURT

SINGH, J.

The primary issue on this appeal is whether there can be an unequal distribution of the marital home under the "just and proper" standard set forth in Domestic Relations Law § 236 (B) (5) (d) (14) where a spouse's criminal conduct and subsequent incarceration impacts the family. We agree that Supreme Court providently exercised its discretion in awarding the wife the greater value of the marital residence. However, we modify the court's ruling to provide for a 60%/40% division rather than a 75%/25% division.

The parties were married in June of 1989. They have two children from the marriage. The first son was born in 1996. A younger son was born in 2001. Shortly after the older son was born, the family purchased and moved into a cooperative apartment on Park Avenue in Manhattan.

The parties were gainfully employed at the time of their marriage. The husband began working for Ernst & Young (E&Y) in 1991 and was made partner in 1996. In October 2007, due to a pending Securities and Exchange Commission insider trading investigation, the husband resigned at the request of E&Y. At that time, he had been earning $1.25 million a year. The wife started working for JPMorgan Chase in 1982. In 2000, the wife voluntarily left JPMorgan to raise their two sons. When she resigned to become a stay-at-home mother, she was earning a salary of approximately $200,000 with annual bonuses nearing $500,000.

In 2010, the husband was indicted on charges of conspiracy and insider trading. At trial, the husband maintained his innocence and claimed that a woman with whom he was having an affair stole his BlackBerry and used the information to engage in insider trading. He was found guilty and served a one year and one day sentence in federal prison from May 2010 through January 2011. The SEC investigation and criminal trial depleted the joint assets of the parties. The divorce proceedings started on January 26, 2010.

The parties were unemployed from October 2007 through February of 2010. In the matrimonial action, the wife testified that she attempted unsuccessfully to secure employment starting in 2008. She finally returned to work at JPMorgan in February of 2010, shortly before the husband was imprisoned. In 2013, her base salary was $300,000 and her bonus was more than $200,000. The husband began working at Sherwood Partners after his release from incarceration and testified that, as of 2013, his base salary was $226,000.

At the time of the trial, the apartment was valued at $4.75 million. The husband admitted that he stopped contributing to the mortgage shortly before he went to prison in May 2010.

The parties offered testimony regarding the children's living arrangements and significant emotional issues that occurred after the husband's criminal actions and incarceration. In January 2014, the younger son threatened to kill himself and the other students in his middle school class. He was hospitalized and transferred to a mental health facility, where he

remained for approximately two weeks. At the time of trial, the younger son had been expelled from two schools, and was taking classes at home. He was not allowed in a school facility given his behavior and mental state.

The older son also suffered from severe emotional issues. In October of 2012, he attempted suicide at his boarding school and was asked to withdraw. He was later officially expelled following a separate incident.

The mother testified that in 2013, after the parties were separated, the younger son called her hysterically crying because the father had apparently abused and bitten him. She testified that the child had a bite mark on his thigh that was three to four inches in diameter, and that he was crying and shaking for two hours after the incident occurred.

Following that event, the younger son lived exclusively with the wife. The husband was arrested for assault and child endangerment, and an order of protection was entered against him pertaining to the younger son. The wife testified that the older son began living with the father because the children had a strained relationship with each other and it was difficult for them to live in the same home.

Supreme Court distributed the marital home in the amount of 75% to the wife and 25% to the husband, rejecting the husband's contention that the value should be allocated on a 50%/50% basis. The court cited to general authority supporting its broad discretion and found that the 75%/25% apportionment was "justified upon the record" given the husband's "behavior and activities." The court found that the husband had failed to prove that such a split was "unjust, inappropriate or inequitable."

Supreme Court also determined that the Referee's recommended credits pertaining to the legal fees should be awarded "on the basis that they are just and proper within the meaning of Domestic Relations Law § 236 (B) (5) (d) (14)." The court found that the wife was entitled to a 50% credit because it is "not necessary to have a finding of marital waste" in order to impose financial responsibility on a party for the "expenses arising from his criminal activit[y]."

Finally, in making its child support calculations, the court below used the 2013 income figures and a 17% child support percentage for one child. The record and evidence at trial showed that a shared custody arrangement no longer existed

at the time of trial. Each parent was "both a custodial parent and a non custodial parent for child support purposes." Accordingly, each party owed child support to the other only for their non-custodial child.

■ We turn first to the division of the marital home. Our precedents hold that equitable distribution of assets does not necessarily mean equal distribution (*Greenwald v Greenwald*, 164 AD2d 706 [1st Dept 1991], *lv denied* 78 NY2d 855 [1991]). Rather, under section 236 (B) (5) (c) of the Domestic Relations Law, "[m]arital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties" (*see McKnight v McKnight*, 18 AD3d 288, 289 [1st Dept 2005]). As Justice Titone aptly noted in *Rodgers v Rodgers* (98 AD2d 386, 391 [2d Dept 1983], *appeal dismissed* 62 NY2d 646 [1984]), "fairness, not mathematical precision, is the guidepost. Under equitable distribution, a court possesses flexibility and elasticity to mold an appropriate decree because what is fair and just in one circumstance may not be so in another."

Section 236 (B) (5) (d) of the Domestic Relations Law, which specifies the factors to be considered in making an award of equitable distribution, includes a catch-all provision that empowers a court to look at "any other factor which the court shall expressly find to be just and proper" (Domestic Relations Law § 236 [B] [5] [d] [14]). However, marital fault may not be considered as "just and proper" except in "a truly exceptional situation, due to outrageous or conscience-shocking conduct on the part of one spouse, that will require the court to consider whether to adjust the equitable distribution of the assets" (*Howard S. v Lillian S.*, 14 NY3d 431, 436 [2010] [adultery, by itself, is not egregious conduct]; *Havell v Islam*, 301 AD2d 339 [1st Dept 2002] [malicious assault of a spouse in the proximity of children amounts to egregious conduct]; *Pierre v Pierre*, 145 AD3d 586 [1st Dept 2016] [stabbing and physically assaulting wife is egregious conduct]).

Supreme Court took into account the husband's "adulterous and criminal behavior" in awarding the wife 75% of the marital home. The husband's adulterous conduct is not sufficiently egregious and shocking to the conscience to justify making an unequal distribution of the marital home. However, we hold that the impact of the husband's criminal conduct on the family may be considered in making an unequal distribution. In

*Kohl v Kohl* (6 Misc 3d 1009[A], 2004 NY Slip Op 51759[U], *24 [Sup Ct, NY County 2004], *affd* 24 AD3d 219 [1st Dept 2005]), the wife sought an unequal distribution of the marital estate based on the husband's criminal conviction. The trial court denied the request as the father supported his family by borrowing money from friends and business acquaintances until such time that he was able to resume his career (2004 NY Slip Op 51759[U], *25). The husband accepted a plea that allowed him to resume his career and business (*id.*). Within a few years after his indictment, he was earning as much income as he had prior to the criminal proceeding (*id.*). Also, the parties' standard of living did not change as a result of the husband's actions (*id.*). On that record, we affirmed the distribution of the value of the parties' residences at 50%/50% (*id.* at *25, *26, *27).

Unlike *Kohl*, the record in this case supports an unequal distribution. The parties were required to spend down their savings from 2007 through 2010 when the husband was forced to resign due to the SEC investigation. He refused to take a plea bargain and insisted on going to trial, blaming a woman with whom he had an extramarital affair for his insider trading. He was convicted of a felony and lost his license to practice law. The husband's post-incarceration earnings at the time of the trial dropped significantly to less than 20% of his prior income. His income never returned to the level he earned prior to the conviction.

As a result of the husband's criminal actions, the wife, who had left a lucrative career to raise their children, was compelled to return to work after being out of the work force for almost a decade. This meant that the wife could no longer remain at home with the children. During this time, the younger son suffered from psychiatric issues and the older son from significant emotional issues.

In short, the husband's insider trading, and ensuing criminal trial, conviction and incarceration, caused the family to undergo financial losses and a substantial decrease in the standard of living. These events also significantly disrupted the family's stability and well-being. Based on our review of the record, we find that a 60%/40% equitable division of the value of the marital estate is just and proper when taking into account the hardship that the husband put his family through as a result of his volitional and irresponsible behavior.

■ Next, the husband challenges Supreme Court's award to the wife of a credit of 50% of marital funds expended in connection with the SEC investigation and criminal proceedings. In *Kohl*, the court found that the husband should be responsible for 65% of the legal fees for civil forfeiture proceedings and the wife responsible for 35% (2004 NY Slip Op 51759[U], *30). We agreed that the wife should not bear equally the sums incurred for legal debts while the parties were married. Here, the wife maintains that she should not be liable for legal fees as she was not a party to the SEC action and also believed the husband's assertions of innocence.

We agree that to hold the wife responsible for the accumulation of substantial legal fees for which she shares no culpability would be inequitable. It is not necessary for a court to make a finding of marital waste to impose financial responsibility on a party for expenses arising from his or her criminal activities (*Kohl*, 24 AD3d at 220). Accordingly, the portion of the judgment awarding the wife a 50% credit for the legal fees arising from the husband's criminal activity is affirmed.

The husband's arguments with respect to Supreme Court's calculation of child support are unfounded. The record supports the court's finding that the wife is currently the custodial parent of the younger son and that the husband was the custodial parent of the older son, before his emancipation. While the husband argues that the court erred by failing to apply the parties' 2013 income figures, the underlying order and the face of the judgment appealed from clearly indicate that the 2013 figures were, in fact, used by the court. The court also correctly applied the 17% child support percentage for the care of one child as opposed to the care of two, which is in line with its finding that the parties were each the custodial parent of one child only (Family Ct Act § 413 [1] [b] [3] [i]). The court properly calculated a net amount of $1,884.17 per month in child support due to the husband.

We have considered the husband's remaining contentions and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Deborah A. Kaplan, J.), entered May 24, 2016, granting, among other things, a 75%/25% division of the value of the marital home should be modified, on the law and the facts, to provide for a 60%/40% equitable division of the marital home, and otherwise affirmed, without costs.

TOM, J.P., MAZZARELLI, ANDRIAS and OING, JJ., concur.

Judgment, Supreme Court, New York County, entered May 24, 2016, modified, on the law and the facts, to provide for a 60%/40% equitable division of the marital home, and otherwise affirmed, without costs.